**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00607 (EGS)** |
| **v.** | : | |
| | : | |
| **JOHN HUBERT GETSINGER, JR.** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter.  For the reasons set forth herein, the government requests that this Court sentence John Hubert Getsinger, Jr. to 45 days' imprisonment, and $500 restitution.

### I.     Introduction

The defendant, John Hubert Getsinger, Jr. ("Getsinger"), and his wife Stacie Ann Hargis-Getsinger ("Hargis-Getsinger")(Case No. 21-cr-607 (EGS)),[1] participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' of property damage.

Getsinger pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building.  As explained herein, a sentence of 45 days' imprisonment is appropriate in this case because: (1) he observed, before entering the Capitol Building, rioters fighting the police outside of the Rotunda doors and breaking windows there,

---

[1] This Court is set to sentence both Getsingers on April 21, 2022.

demonstrating his knowledge of ongoing violence against police and property destruction; (2) he breached the Capitol through the Rotunda doors, joining a large mob of other rioters who overpowered the police to gain entry; (3) he remained in the Capitol for approximately 39 minutes making his way into the office of a Congressman Kevin McCarthy; (4) he expressed no remorse for his actions at the Capitol for almost a year, and bragged that he "[e]ven smoked a fatty inside the capital [sic]", and appeared to actually smoke marijuana in the Capitol; (5) he actively promoted false information in social media claiming that law enforcement assisted Antifa and that he was pushed into the Capitol; and (6) after the riot he justified his actions claiming that "we aren't heard any other way" and warned that, "[i]t ain't over".

Even if he didn't personally engage in violence or property destruction during the riot, before entering the Capitol on January 6, Getsinger watched as rioters fought the police in close proximity to him. In his immediate presence, other rioters screamed "We're storming it!", We're taking it!", "Charge!", "Let's fucking go!", "Push it!", "Keep going", "They broke the door down!" Getsinger and his wife then advanced into the Capitol, joining a large crowd of rioters who physically pushed against police officers and entered the building through the Rotunda doors as those officers struggled to keep them out.  They then went into the Rotunda, to Congressman McCarthy's office, appeared to smoke marijuana, and stayed in the Capitol for approximately 39 minutes.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to delay the certification vote.  *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob

isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, Getsinger's participation in a riot that actually succeeded in halting the Congressional certification combined with his lack of remorse and spread of propaganda renders a significant jail sentence both necessary and appropriate in this case.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

### Getsinger's Role in the January 6, 2021 Attack on the Capitol

Hargis-Getsinger and others used the Berkley (South Carolina) County Growth & Development Group public Facebook page to coordinate a bus trip to D.C. to protest the 2020 presidential election. On January 5, 2021, under the topic, "Why do posts about people going to D.C. keep getting deleted?", Hargis-Getsinger posted, "We are going!".

|  |  |  |
|---|---|---|
| **To** | Berkeley County Growth & Development (1686824054956289) | |
| **From** | ████████████████████████ | |
| **Id** | | |
| **Time** | 2021-01-05 13:26:36 UTC | |
| **Text** | Why do posts about people going to D.C. keep getting deleted? | |
| **Comments** | **User** | ████████████████████ |
| | **Text** | Because it's not relevant to Berkeley county's growth, nor development. |
| | **Time** | 2021-01-05 13:35:14 UTC |
| | **User** | ████████████████████ |
| | **Text** | It's not the topic. It's the abusive bullshit comments that follow |
| | **Time** | 2021-01-05 13:35:27 UTC |
| | **User** | Stacie Getsinger ████████████ |
| | **Text** | We are going! |
| | **Time** | 2021-01-05 13:36:26 UTC |

On January 6, 2021, Getsinger and his wife traveled to Washington, D.C. by bus from their home in South Carolina to protest the November 2020 presidential election. *See* ECF 38 (Statement of Offense) *at ¶ 8.*   The Getsingers got their friend (Person – 1) a seat on the bus. Person - 1 rode to D.C. with the Getsingers and live-streamed video of the Getsingers' activity at the Capitol and posted pictures of the bus ride to D.C., including the photo below:





**Image 1**

Once they arrived in D.C., the Getsingers attended a rally by the former President. They next walked with a crowd towards the Capitol. Along the way, the Getsingers joined in a crowd that chanted, "Do your job!", and screamed obscenities outside the Department of Justice. ***See Exhibit 1, Clip of Person-1's Live stream at DOJ.*** Hargis-Getsinger first appeared in that video at the 0 0:09 time mark and Getsinger first appears at 00:53, nodding his head in front of the Department of Justice. Hargis-Getsinger later appeared on the video at 2:36 using her phone. Images of Getsinger and his wife outside of the Department of Justice are below.



**Images 2, 3, and 4**

Pearson - 1's recording of the Getsingers continued as they proceeded to the Capitol. At times, Hargis-Getsinger waited on Person - 1 to catch up to her, apparently so they would stay together and allow Person -1 to record their actions. In the photograph below, Hargis-Getsinger waved to let Person -1 know where she was, which was on Capitol grounds near the stairs leading to the Rotunda doors.



**Image 5**

As the Getsingers and Person -1 approached the Capitol, Person -1 explained that they had just attended a speech by Alex Jones. Person -1 claimed that law enforcement used teargas on them. Yet, the trio remained on Capitol grounds. ***See* Exhibit 2, Clip of Getsingers on Capitol Grounds.** Hargis-Getsinger first appeared at 00:35. Hargis-Getsinger waited for Person -1 to catch up with her at 1:24, then waved at Person-1 to come to her at 1:53. At 2:03 Person -1 rejoined the Getsingers, a screenshot of which is below.



**Image 6**

Person -1 also video-recorded others outside of the Capitol near the stairs leading to the Rotunda doors.



**Image 7**

A crowd gathered at the base of the stairs below the Rotunda doors. The Getsingers reveled with others while Person -1 continued to live-stream the surrounding events. Screen shots of this activity is below, with the Getsingers appearing inside the red circles.



**Image 8**



**Image 9**

Some in the crowd then announced that they were "Storming the Capitol." The Getsingers began their ascent with the crowd up the stairs towards the Rotunda doors. Once Getsinger got to the outside of the Rotunda doors, he observed others battling with the police who tried to stop individuals from entering the U.S. Capitol building.  ECF 38 at 9.

Person -1 recorded Getsinger and others going up the stairs to the Rotunda doors. Getsinger is shown below with his wife as Hargis-Getsinger appears to use her telephone to record rioters fighting with law enforcement outside of the Rotunda doors.



**Image 10**

Within seconds of Person -1 catching up to film the Getsingers, the sound of an exploding flash bang device, employed by police to deter the rioters, can be heard on Person -1's video. Person -1 then announced, "We need to go!" She and others turned and retreated from the Rotunda doors and down the stairs. *See* **Exhibit 3, Getsingers' Approach to Rotunda Doors**. The

Getsingers, however, remained and eventually pushed their way past law enforcement and through the Rotunda doors. An open-source video, available on YouTube, captures the violence that took place at these doors. ***See* Exhibit 4, The US Capitol Breach as it Happened, East Doors.** [2]

CCTV from inside the Rotunda doors, approximately six minutes before the Getsingers breached the Capitol building, depict harrowing scenes of the Capitol Police officers outside the doors (circled below) attempting to prevent rioters from breaching the Capitol.  Simultaneously, Capitol Police officers inside the building (shown inside the red oval below) tried to prevent rioters who were already inside from opening the doors for their fellow rioters.  ***See* Exhibit 5, CCTV Rotunda Door Interior.**



**Image 11**

Rioters from inside the Capitol quickly outnumbered the Capitol Police officers and opened the doors, allowing their fellow rioters to pour into the building.

---

[2] This video is also available at https://www.youtube.com/watch?app=desktop&v"MVullQb-Lec.



**Image 12**

Now even more vastly outnumbered, law enforcement gallantly attempted to reinforce the door, but a crowd of rioters, which included the Getsingers, quickly overwhelmed them and forced their way inside of the Capitol building. Screen shots of this is shown below, where the Getsingers start their advance into the Capitol building on the perimeter of the doors and then enter with a mob of rioters who push and pull away the police who are at the door. Ultimately, the Getsingers breached the Capitol building at approximately 2:44 p.m. ECF at 10. ***See* Exhibit 6, CCTV of Getsingers Breaching the Capitol.** Images 13 to 16 below, show the Gestingers, circled in those images, entering the Capitol.



**Image 13**



**Image 14**



**Image 15**



**Image 16**

Once inside the Capitol building, the Getsingers went to the Rotunda, as shown below in Images 18 to 22, with Hargis-Getsinger appearing to record activity there with her phone.



**Image 17**



**Image 18**



**Image 19**

Getsinger bragged on Facebook that he "[e]ven smoked a fatty inside the capital [sic]". He appears to do so in the Rotunda and this activity is captured on CCTV. Hargis-Getsinger also appeared to join with Getsinger in smoking marijuana in the Rotunda. *See* **Exhibit 7, Getsingers Smoking in the Rotunda.** In Image 20, Getsinger has in his hand an item that someone in the Rotunda had just passed to him. In this screen shot, Getsinger has placed the item to his mouth and appears to smoke it. After this, he passes it back to the person who gave it to him.



**Image 20**

After Getsinger smoked, he passed the item to the man who gave it to him. After a couple of other people handle the item, it is passed to Harris-Getsinger. Image 21 shows Hargis-Getsinger appearing to smoke the item.



**Image 21**

The Getsingers then left the Rotunda and went to a sensitive area of the Capitol, Congressman Kevin McCarthy's Office. They entered his office and were inside of it for approximately 40 seconds. Images 22 and 23, which are screen shots from CCTV, show the Getsingers entering and leaving Congressman McCarthy's Office.



**Image 22**



**Image 23**

The Getsingers then proceed back to the Rotunda as shown below in Images 24 and 25. Thereafter, after spending approximately 39 minutes in the Capitol Building, they exited through the same doors that they had entered the building.



**Image 24**



**Image 25**

The Getsingers did not appear to engage in violence or destruction of property after they pushed their way past law enforcement to enter the Capitol. They remained in the Capitol Building for approximately 39 minutes, exiting through the Rotunda doors at 3:23 p.m.  Both Getsingers have admitted that when they entered the U.S. Capitol Building they did not have permission to do so, and that they paraded, demonstrated, or picketed therein. They did not express remorse for their actions until they were interviewed by the Probation Office for their Presentence Investigation Reports (PSRs) and provided written statements. There, they declared that, "[w]e take full responsibility for the count we are pleading to. We know what we did was wrong and accept full responsibility for entering the Capitol. We are sorry for what we did and only have ourselves to blame."

*Social Media Posts*

On November 9, 2020, Getsinger complained on Facebook of voter fraud in an exchange with his friend who said, "I just don't see how they can get away with all this voter fraud . . . ." Getsinger responded, "Oh I agree. Wholeheartedly". Thereafter, he began to plan to go to D.C. to protest the election.

On December 22, 2020, Getsinger asked a friend, "Have you thought about getting a large group from BC to go to Washington DC on January 6th? I have already have 2 guys going with me. Just a thought". His friend responded that he was too busy with work.

On January 3, 2021, Getsinger told a friend who had invited him to a local event, "I couldn't have went anyway, going to dc to support our prez". [sic]

After the riot, on January 6, 2021, Getsinger responded, "I was with them then" when a friend on Facebook commented, "It's saying that a bus load of antifa wearing Trump gear are the ones that busted into the Capitol building.... Probably being censored". Getsinger went on to brag

that he "[e]ven smoked a fatty inside the capital [sic]". On January 7th, another friend posted on

Facebook, "I have a feeling today did nothing good for Trump or our country…."  Getsinger

warned, "It ain't over".

Getsinger also used his wife's Facebook account on January 7, 2021 to contact another

friend, wherein he falsely claimed that he was pushed into the Capitol, but that his participation

in the riot was necessary "to be heard".

**Getsinger**: "_____. Its [sic] John Getsinger. I was in the capital bldg today. Am I a

criminal?"

**Friend**:  "If you did not break into the capital building, of course not. The peaceful

protesters who were not running around on the floor of the house and senate and busting

their way into the capitol building are not criminals. But those who were busting their

way onto the floor of the house and senate are criminals. Did you bust in?"

**Getsinger**: "I was pushed in. But we aren't heard any other way".

On January 8, 2021, Getsinger began to discuss with a friend on Facebook the prospect of

getting charged for his illegal conduct and conspiracy theories:

**Getsinger**: "____ momma thinks the fbi is gonna come get me".

**Friend**:"[o]kay, as long as they don't have you on camera doing any damage, all you did

was get pushed with the crowd into the halls."

**Getsinger**: "Yep and yell a lot".

**Friend**: "But, since the FBI is crooked too, all we can do is pray and contact _____

and Donald Trump if they try to arrest you."

**Getsinger:** "Yep". "It'll be fine."

**Friend: "**Even the police aided Antifa into DC in three buses and there's film of it."

Getsinger: "I know"

On January 9, 2021, Getsinger posted on Facebook a link to a post on Parler in all bold letters, "IS MIKE PENCE A TRAITOR".

On January 11, 2021, the Getsingers continued discussing on Facebook the prospects of being held accountable for their actions.  Getsinger commented, "@Stacie Getsinger thinks we are going to jail".  A friend then asked, "does stacie think that". Person-1 responded, "[f]or going in." Stacie Hargis-Getsinger responded with a "thumbs up" symbol. And responded, "Yes" when someone asked, "did they open the doors for you."

*The Charges and Plea Agreement*

On June 9, 2021, Getsinger and his wife were charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and 40 U.S.C. §§ 5104(e)(2). On June 15, 2021, Getsinger was arrested at his home in South Carolina. On September 30, 2021, Getsinger and his wife were charged by four-count Information with 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On December 2, 2021, he pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Getsinger agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Getsinger now faces a sentencing on a single count of 40 U.S.C.  § 5104(e)(2)(D). As noted by the plea agreement and the U.S. Probation Office, Getsinger faces up to six months of imprisonment and a fine of up to $5,000. Getsinger must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

IV.     **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of incarceration.

A.  **The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at Hargis-Getsinger's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should

look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

To be clear, had Hargis-Getsinger personally engaged in violence or destruction, he or she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on Hargis-Getsinger's part is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish Hargis-Getsinger from most other misdemeanor defendants.  Hargis-Getsinger's lack of violence and property destruction is the only reason she was charged only with, and permitted to plead to, a misdemeanor rather than felony.

Soon after the riot, Hargis-Getsinger began to worry that law enforcement would arrest her for rioting at the Capitol, but she did not express any remorse – only fear that she was going to prison.  Hargis-Getsinger's actions do warrant the prison sentence that she anticipated.

Hargis-Getsinger and her husband clearly knew that the police were overwhelmed by rioters at the Rotunda doors. The Getsingers joined other rioters to use their strength in numbers to force their way past law enforcement into the Capitol. Hargis-Getsinger forcibly entered the Capitol with that mob even after she was admittedly hit with tear gas by the police who were desperately trying to protect the building.  The Getsingers, like their friend Person - 1, saw the

violence being inflicted on law enforcement at the Rotunda doors, but unlike Person-1 who retreated, the Getsingers continued to storm the Capitol. They then entered the Rotunda and remained in the Capitol for approximately 39 minutes. Getsinger did so even though he knew that police were trying to clear rioters from the Capitol.

After leaving the Capitol, Getsinger bragged that he smoked marijuana in the Capitol, stating on Facebook, "[e]ven smoked a fatty inside the capital [sic]". He even previewed future violence when a friend posted on Facebook, "I have a feeling today did nothing good for Trump or our country…."  Getsinger warned, "It ain't over". Getsinger went further and joined in false information that the police aided Antifa during the riot. He also justified his illegal conduct, posting on Facebook, "we aren't heard any other way".  In sum, Getsinger proudly participated in the riot, bragged about it, and spread false information about law enforcement.

Now, facing sentencing, Getsinger has expressed remorse. It is in that context in which the Court should consider the weight to accord it. *See United States v.  Matthew Carl Mazzocco,* 21-cr-0054-TSC, Tr. 10/4/2 at 29-30 ("But Mr. Mazzocco's remorse -- and I believe his remorse is sincere -- Mr. Mazzocco's remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan). In sum, despite Getsinger's belated expression of remorse, the social media posts obtained by the FBI where Getsinger spread lies, bragged about breaching the Capitol and spending so much time inside that "[e]ven smoked a fatty inside the capital [sic]", capture the essence of the nature and the circumstances of this offense and warrant the clear need for incarceration.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Getsinger's criminal history consists of one misdemeanor conviction in 2008 for having "50 Shells in [a] Dive Field" PSR, ¶ 31, which the Government believes refers to Getsinger exceeding the mandatory amount of shotgun shells that a hunter can possess while hunting doves in South Carolina. Wildlife Management Areas( https://www.eregulations.com/southcarolina/hunting/wma-public-dove-fields).

Defendant is a long-time user of marijuana and has been so up until the instant offense. A urine sample collected by the U.S. Probation Office for the District of South Carolina on June 21, 2021 was positive for marijuana. PSR, ¶ 53.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70; It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see also United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 24 ("What happened on that day was nothing less than the attempt of a violent mob to prevent the orderly and peaceful certification of an election as part of the transition of power from one administration to the next, something that has happened with regularity over the history of this country. That mob was trying to overthrow the government.") (statement of Judge Chutkan).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be

made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.")(statement of Judge Moss).  It is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Getsinger's actions clearly demonstrate the need for specific deterrence for this defendant. Getsinger witnessed and used the violence at the Rotunda doors to breach the Capitol. He remained in the Capitol for 39 minutes and went on to celebrate the violence of the day bragging that he was with those who stormed the Capitol and that he "[e]ven smoked a fatty inside the capital [sic]". Getsinger's wife also bragged on Facebook that they, "were thr [sic] first 100 that got inside".

Getsinger and his wife were not deterred by law enforcement, even though, as his wife admitted on Facebook, she saw that "[p]olice were using percussion grenades, batons and tear gas even before the major pushing and shoving started. Inside they kept dropping tear gas inside the capital [sic]." Instead, the Getsingers stormed the Capitol and remained in it for almost 40 minutes. Getsinger also joined in false information on Facebook that the police aided Antifa during the riot. He also warned that, "[i]t ain't over."

Getsinger's failure to acknowledge the dangers and violence of January 6, 2021, his bragging about smoking marijuana in the Capitol, spreading of false information relating to the attack on the Capitol, and his lack of remorse until the eve of sentencing underscore the need for specific deterrence in this case.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as

in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[4] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not become the default.[5] Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

Getsinger has pleaded guilty to Count Four of the Superseding Information, charging her with Parading, Picketing and Demonstrating, a violation of 40 U.S.C. § 5104(e)(2)(G). This

---

[4] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[5]  Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however. -

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside, the nature of any statements she made (on social media or otherwise), whether she destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences.   And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement.   *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants

were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may also consider the sentence imposed in *United States v. Russell James Peterson*, 1:12-cr-00309 (ABJ); *United States v. Frank J. Scavo*, 1:21-CR-254 (RCL); *United States v. Brandon J. Miller*, 1:21-CR-266 (TSC); and *United States v. Annie Howell*, 1:21- CR-217 (TFH) for reference.

In *United States v. Russell James Peterson*, 1:12-cr-00309 (ABJ), the Court sentenced the defendant to 30 days' imprisonment. Peterson traveled from Pennsylvania to D.C. to attend the "Stop the Steal" rally. He joined crowds of people who overwhelmed law enforcement both outside and inside the building at the Senate Wing Door. Peterson stood by and watched as rioters violently attacked police officers, shoving and pushing the officers as they yelled at and berated them. Like Hargis-Getsinger, he did not personally assault the police. Once inside the Capitol he initiated a live stream and told whoever was watching his broadcast that "we took the Capitol. The Capitol is ours right now." When he was interviewed by the FBI, he tried to downplay his involvement and outright lied, telling agents he did not witness any acts of violence on January 6. Peterson's criminal history consisted of misdemeanor-controlled substance possession or use convictions.

The Court in *United States v. Frank J. Scavo*, 1:21-CR-254 (RCL) sentenced the defendant to 60 days' incarceration. Scavo entered the Capitol through the Rotunda Doors, where multiple assaults on law enforcement occurred, some of which Scavo captured on his cellphone. Despite witnessing violence, Scavo, entered the Capitol. Unlike Getsinger, Scavo was only inside of the Capitol for a short period of time, approximately 10 minutes.  But like Hargis-Getsinger, Scavo was boastful about his participation and once inside the Capitol recorded statements on his

cellphone about storming and taking back the Capitol. Scavo also downplayed the violence at the Capitol, and made public statements, including in a television interview, that either downplayed or made light of his conduct.   Scavo, unlike Hargis-Getsinger, was cooperative with his investigation and produced to the FBI evidence of his conduct at the Capitol. He also expressed remorse for his actions. Scavo had no prior convictions at the time of sentencing.

The Court in *United States v. Brandon J. Miller*, 1:21-CR-266 (TSC) sentenced the defendant to 20 days' incarceration.  Miller walked with a crowd to the U.S. Capitol and stood outside the building and observed people climbing on the building's walls. Miller breached the Capitol by climbing through a broken window by the Senate Wing Door.  Miller then publicly broadcast his illegal presence over Facebook Live.  Miller remained in the Capitol approximately 10 minutes. In his statements after January 6, Miller showed pride rather than remorse or contrition for his criminal conduct, and falsely claimed that the protest was peaceful.  He also received accolades from a friend and suggested the need for a civil war. Miller had several arrests for various municipal and traffic related offenses as well as two criminal offenses, and 2015 and 2021 convictions for Possession of Marijuana Drug Paraphernalia.

In *United States v. Annie Howell*, 1:21- CR-217 (TFH), the Court sentenced Howell to 60 days of intermittent incarceration as a condition of 36 months' probation, with incarceration time being served in 6 separate 10-day periods.  Howell prepared for violence prior to the January 6 by discussing plans for bail, the acquisition of tear gas, and meeting with Proud Boys, and she on January 6 before she headed to the U.S. Capitol she knew rioters had breached defensive perimeters established by police at the U.S. Capitol; Like the Getsingers, Howell witnessed violence between other rioters and law enforcement officers before entering the U.S. Capitol, including the siege at the Lower West Terrace tunnel entrance, where she recorded several videos

of the battle.  Howell made statements on social media during and after the riot that displayed a lack of remorse, including falsely blaming the law enforcement officers for the violence on January 6. She also likely destroyed evidence as indicated by missing social media posts and the fact that she reset her mobile device 20 days after the riot.

Two cases involving defendants who smoked marijuana while in the Capitol on January 6 are also relevant here, *United States v. Eduardo Nicolas Alvear Gonzalez*, 1:21-CR-00115- CRC, and *United States v. James Bonet*, 1:21-CR-00121- EGS, as it appears as though the Getsingers smoked marijuana in the Capitol.

Gonzalez was among the first wave of rioters to enter the U.S. Capitol despite seeing violence between rioters and officers, he made numerous recordings from the riot and the Capitol, and he illegally smoked and distributed marijuana to others in the Capitol, only left the Capitol when forced to do so by law, live-streamed a review of his footage from the January 6 attack on the Capitol in the days following the riot, hid from law enforcement after the January 6 attack,  and publicly and repeatedly communicated a lack of remorse for his actions. The Court sentenced Gonzalez to 45 days' incarceration.

The defendant in the *Bonet* case was sentenced on one-count of violating one count of 18 U.S.C. § 1752(a)(1), Unlawful Entry in a Restricted Building or Grounds. Bonet posted a video calling police "pieces of shit," seeing a rioter fight with police, and watching a woman being carried away on a stretcher.  He breached the Capitol and celebrated this perceived accomplishment by filming himself smoking a joint inside Senator Jeff Merkley's office that was trashed during the riot.  The Court sentenced Bonet to 90 days' incarceration.

Finally, in *United States v. Erik Rau*, 1:21-CR-00467- JEB, the defendant was sentenced on one-count of violating 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in the Capitol Building.

Rau was sentenced to 45 days' incarceration based upon bringing items to the Capitol in preparation for a battle, scaling a bicycle rack used as a ladder to reach the Capitol, encouraging and inciting violence against the police. In addition, as did the Getsingers, Rau entered a sensitive area of the U.S. Capitol - the Speaker's conference room.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Getsinger to 45 days' incarceration and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on her liberty as a consequence of his behavior, while recognizing her acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:     /s/ Anthony L. Franks
        ANTHONY L. FRANKS
        Missouri Bar No. 50217MO
        Assistant United States Attorney
        Detailee – Federal Major Crimes
        United States Attorney's Office
        for the District of Columbia
        Telephone No. (314) 539-3995
        anthony.franks@usdoj.gov

Table 1: Cases in which the government recommended a probation sentence without home detention[1]

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Morgan-Lloyd, Anna | 1:21-CR-00164-RCL | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation<br>40 hours community service<br>$500 restitution | 36 months' probation<br>120 hours community service<br>$500 restitution |
| Ehrke, Valerie | 1:21-CR-00097-PLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation<br>40 hours community service<br>$500 restitution | 36 months' probation<br>120 hours community service<br>$500 restitution |
| Bissey, Donna | 1:21-CR-00165-TSC | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation<br>40 hours community service<br>$500 restitution | 14 days' incarceration<br>60 hours community service<br>$500 restitution |
| Hiles, Jacob | 1:21-CR-00155-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation<br>60 hours community service<br>$500 restitution | 24 months' probation<br>60 hours community service<br>$500 restitution |
| Wangler, Douglas | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation<br>40 hours community service<br>$500 restitution | 24 months' probation<br>60 hours community service<br>$500 restitution |
| Harrison, Bruce | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 48 months' probation<br>40 hours community service<br>$500 restitution | 24 months' probation<br>60 hours of community service<br>$500 restitution |

---

[1] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Table 2: Cases in which the government recommended a probation sentence with home detention

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Bustle, Jessica | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention<br>36 months' probation<br>40 hours community service<br>$500 restitution | 2 months' home detention<br>24 months' probation<br>40 hours community service<br>$500 restitution |
| Bustle, Joshua | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 30 days' home detention<br>36 months' probation<br>40 hours community service<br>$500 restitution | 30 days' home detention<br>24 months' probation<br>40 hours community service<br>$500 restitution |
| Doyle, Danielle | 1:21-CR-00324-TNM | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 2 months' probation<br>$3,000 fine<br>$500 restitution |
| Bennett, Andrew | 1:21-CR-00227-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 3 months' home detention<br>24 months' probation<br>80 hours community service<br>$500 restitution |
| Mazzocco, Matthew | 1:21-CR-00054-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 45 days' incarceration<br>60 months' probation<br>$500 restitution |
| Rosa, Eliel | 1:21-CR-00068-TNM | 40 U.S.C. § 5104(e)(2)(G) | 30 days' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 12 months' probation<br>100 hours community service<br>$500 restitution |

2

| | | | | |
|---|---|---|---|---|
| Gallagher, Thomas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days' home detention<br>36 months' probation<br>Fine<br>60 hours community service<br>$500 restitution | 24 months' probation<br>60 hours community service<br>$500 restitution |
| Vinson, Thomas | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention<br>3 years' probation<br>60 hours community service<br>$500 restitution | 5 years' probation<br>$5,000 fine<br>120 hours community service<br>$500 restitution |
| Dillon, Brittiany | 1:21-CR-00360-DLF | 40 U.S.C. § 5104(e)(2)(D) | 3 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 2 months' home detention<br>3 years' probation<br>$500 restitution |
| Sanders, Jonathan | 1:21-CR-00384-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 36 months' probation<br>60 hours community service<br>$500 restitution |
| Fitchett, Cindy | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 30 days' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution |
| Sweet, Douglas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 30 days' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution |
| Cordon, Sean | 1:21-CR-00269-TNM | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 2 months' probation<br>$4000 fine |

| Wilkerson, John IV | 1:21-CR-00302-CRC | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 36 months' probation<br>$2500 fine<br>60 hours community service<br>$500 restitution |
|---|---|---|---|---|
| Jones, Caleb | 1:21-CR-00321-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 2 months' home detention<br>24 months' probation<br>100 hours community service<br>$500 restitution |
| Brown, Terry | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 30 days' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution |
| Wrigley, Andrew | 1:21-CR-00042-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 18 months' probation<br>$2000 fine<br>60 hours community service<br>$500 restitution |
| Parks, Jennifer | 1:21-CR-00363-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 24 months' probation<br>60 hours community service<br>$500 restitution |
| Reimler, Nicholas | 1:21-CR-00239-RDM | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 30 days' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution |
| Miller, Brandon | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 20 days' incarceration<br>60 hours community service<br>$500 restitution |
| Miller, Stephanie | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 14 days' incarceration<br>60 hours community service<br>$500 restitution |
| Hatley, Andrew | 1:21-CR-00098-TFH | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 36 months' probation<br>$500 restitution |

| Pert, Rachael | 1:21-CR-00139-TNM | 18 U.S.C. § 1752(a)(1) | 3 months' home detention<br>24 months' probation<br>40 hours community service<br>$500 restitution | 24 months' probation<br>100 hours community service<br>$500 restitution |
|---|---|---|---|---|
| Winn, Dana | 1:21-CR-00139-TNM | 18 U.S.C. § 1752(a)(1) | 3 months' home detention<br>24 months' probation<br>40 hours community service<br>$500 restitution | 10 days' incarceration (weekends)<br>12 months' probation<br>100 hours community service<br>$500 restitution |
| Wickersham, Gary | 1:21-CR-00606-RCL | 40 U.S.C. § 5104(e)(2)(G) | 4 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 3 months' home detention<br>36 months' probation<br>$2000 fine<br>$500 restitution |
| Schwemmer, Esther | 1:21-CR-00364-DLF | 40 U.S.C. § 5104(e)(2)(G) | 30 days' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 24 months' probation<br>60 hours community service<br>$500 restitution |
| Kelly, Kenneth | 1:21-CR-00331-CKK | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 2 months' home detention<br>12 months' probation<br>60 hours community service<br>$500 restitution |
| Straka, Brandon | 1:21-cr-00579-DLF | 40 U.S.C. § 5104(e)(2)(D) | 4 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 3 months' home detention<br>3 years' probation<br>$5000 fine<br>60 hours community service<br>$500 restitution |
| Sizer, Julia | 1:21-CR-00621-CRC | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | 12 months' probation<br>$2,000 fine<br>$500 restitution |
| Blauser, William | 1:21-CR-00386-TNM | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution | $500 fine<br>$500 restitution |

| Barnard, Richard | 1:21-CR-00235-RC | 40 U.S.C. § 5104(e)(2)(G) | 30 days' home detention 36 months' probation 60 hours community service $500 restitution | 30 days' home detention 12 months' probation 60 hours community service $500 restitution |
|---|---|---|---|---|
| Witcher, Jeffrey | 1:21-CR-00235-RC | 18 U.S.C. § 1752(a)(1) | 2 months' home detention 36 months' probation 60 hours community service $500 restitution | 12 months' probation 60 hours community service $500 restitution |
| McAlanis, Edward | 1:21-CR-00516-DLF | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention 36 months' probation 60 hours community service $500 restitution | 24 months' probation 60 hours CS $500 restitution |
| Lollis, James | 1:21-CR-00671-BAH | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention 36 months' probation 100 hours community service $500 restitution | 3 months' home detention 36 months' probation 90 days' GPS monitoring 100 hours community service $500 restitution |
| Schubert, Amy | 1:21-CR-00588-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 3 months' home detention 36 months' probation 60 hours community service $500 restitution | 18 months' probation $2000 fine 100 hours community service $500 restitution |
| Schubert, John | 1:21-CR-00587-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 2 months' home detention 36 months' probation 60 hours community service $500 restitution | 18 months' probation $1500 fine 100 hours community service $500 restitution |

Table 3: Cases in which the government recommended a sentence of incarceration

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Curzio, Michael | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 6 months' incarceration (time served) | 6 months' incarceration (time served) $500 restitution |
| Hodgkins, Paul | 1:21-CR-00188-RDM | 18 U.S.C. § 1512(c)(2) | 18 months' incarceration | 8 months' incarceration 24 months' supervised release $2000 restitution |

| Dresch, Karl | 1:21-CR-00071-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 6 months' incarceration (time served)<br>$1000 fine<br>$500 restitution | 6 months' incarceration (time served)<br>$500 restitution |
|---|---|---|---|---|
| Jancart, Derek | 1:21-CR-00148-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months' incarceration<br>$500 restitution | 45 days' incarceration<br>$500 restitution |
| Rau, Erik | 1:21-CR-00467-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months' incarceration<br>$500 restitution | 45 days' incarceration<br>$500 restitution |
| Hemenway, Edward | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 45 days' incarceration<br>60 hours community service<br>$500 restitution |
| Reeder, Robert | 1:21-CR-00166-TFH | 40 U.S.C. § 5104(e)(2)(G) | 2 months' incarceration<br>$500 restitution | 3 months' incarceration<br>$500 restitution |
| Bauer, Robert | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 45 days' incarceration<br>60 hours community service<br>$500 restitution |
| Smocks, Troy | 1:21-CR-00198-TSC | 18 U.S.C. § 875(c) | Low end of sentencing guidelines<br>36 months' supervised release | 14 months' incarceration<br>36 months' supervised release |
| Vinson, Lori | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 5 years' probation<br>$5,000 fine<br>120 hours community service<br>$500 restitution |
| Griffith, Jack | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 3 months' incarceration<br>$500 restitution | 3 months' home detention<br>36 months' probation<br>$500 restitution |
| Torrens, Eric | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>$500 restitution | 3 months' home detention<br>36 months' probation<br>$500 restitution |
| Gruppo, Leonard | 1:21-CR-00391-BAH | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 3 months' home detention<br>24 months' probation<br>$3,000 fine<br>$500 restitution |
| Ryan, Jennifer | 1:21-CR-00050-CRC | 40 U.S.C. § 5104(e)(2)(G) | 2 months' incarceration<br>$500 restitution | 2 months' incarceration<br>$1000 fine<br>$500 restitution |

| Croy, Glenn | 1:21-CR-00162-BAH | 40 U.S.C. § 5104(e)(2)(G) | 2 months' incarceration<br>$500 restitution | 14 days' community correctional facility<br>3 months' home detention<br>36 months' probation<br>$500 restitution |
|---|---|---|---|---|
| Stotts, Jordan | 1:21-CR-00272-TJK | 40 U.S.C. § 5104(e)(2)(G) | 45 days' incarceration<br>$500 restitution | 2 months' home detention<br>24 months' probation<br>60 hours community service<br>$500 restitution |
| Fairlamb, Scott | 1:21-CR-00120-RCL | 18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 111(a)(1) | 44 months' incarceration<br>36 months' supervised release<br>$2000 fine | 41 months' incarceration<br>36 months' supervised release<br>$2000 restitution |
| Camper, John | 1:21-CR-00325-CKK | 40 U.S.C. § 5104(e)(2)(G) | 2 months' incarceration<br>$500 restitution | 2 months' incarceration<br>60 hours community service<br>$500 restitution |
| Rukstales, Bradley | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days' incarceration<br>$500 restitution | 30 days' incarceration<br>$500 restitution |
| Cordon, Kevin | 1:21-CR-00277-TNM | 18 U.S.C. § 1752(a)(1) | 30 days' incarceration<br>12 months' supervised release<br>$500 restitution | 12 months' probation<br>$4000 fine<br>100 hours community service<br>$500 restitution |
| Chansley, Jacob | 1:21-CR-00003-RCL | 18 U.S.C. § 1512(c)(2) | 51 months' incarceration<br>36 months' supervised release<br>$2000 restitution | 41 months' incarceration<br>36 months' supervised release<br>$2000 restitution |
| Mish, David | 1:21-CR-00112-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 30 days' incarceration<br>$500 restitution |
| Lolos, John | 1:21-CR-00243-APM | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 14 days' incarceration<br>$500 restitution |
| Scavo, Frank | 1:21-CR-00254-RCL | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>$500 restitution | 2 months' incarceration<br>$5000 fine<br>$500 restitution |
| Abual-Ragheb, Rasha | 1:21-CR-00043-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution |

| Peterson, Russell | 1:21-CR-00309-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>$500 restitution | 30 days' incarceration<br>$500 restitution |
|---|---|---|---|---|
| Simon, Mark | 1:21-CR-00067-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 45 days' incarceration<br>$500 restitution | 35 days' incarceration<br>$500 restitution |
| Ericson, Andrew | 1:21-CR-00506-TNM | 40 U.S.C. § 5104(e)(2)(G) | 2 months' incarceration<br>$500 restitution | 20 days' incarceration (consecutive weekends)<br>24 months' probation<br>$500 restitution |
| Pham, Tam Dinh | 1:21-CR-00109-TJK | 40 U.S.C. § 5104(e)(2)(G) | 2 months' incarceration<br>$500 restitution | 45 days' incarceration<br>$1000 fine<br>$500 restitution |
| Nelson, Brandon | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>$500 restitution | 24 months' probation<br>$2500 fine<br>50 hours community service<br>$500 restitution |
| Markofski, Abram | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>$500 restitution | 24 months' probation<br>$1000 fine<br>50 hours community service<br>$500 restitution |
| Marquez, Felipe | 1:21-CR-00136-RC | 18 U.S.C. § 1752(a)(2) | 4 months' incarceration<br>12 months' supervised release<br>$500 restitution | 3 months' home detention<br>18 months' probation<br>$500 restitution |
| Meredith, Cleveland | 1:21-CR-00159-ABJ | 18 U.S.C. § 875(c) | Midrange of 37-46 months' incarceration<br>36 months' supervised release | 28 months' incarceration<br>36 months' supervised release |
| Sorvisto, Jeremy | 1:21-CR-00320-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 30 days' incarceration<br>$500 restitution |
| Mariotto, Anthony | 1:21-CR-00094-RBW | 40 U.S.C. § 5104(e)(2)(G) | 4 months' incarceration<br>36 months' probation<br>$500 restitution | 36 months' probation<br>$5000 fine<br>250 hours community service<br>$500 restitution |

9

| Courtright, Gracyn | 1:21-CR-00072-CRC | 18 U.S.C. § 1752(a)(1) | 6 months' incarceration<br>12 months' supervised release<br>60 hours community service<br>$500 restitution | 30 days' incarceration<br>12 months' supervised release<br>60 hours community service<br>$500 restitution |
|---|---|---|---|---|
| Palmer, Robert | 1:21-CR-00328-TSC | 18 U.S.C. § 111(a) and (b) | 63 months' incarceration<br>36 months' supervised release<br>$2000 restitution | 63 months' incarceration<br>36 months' supervised release<br>$2000 restitution |
| Thompson, Devlin | 1:21-CR-00461-RCL | 18 U.S.C. § 111(a) and (b) | 48 months' incarceration<br>36 months' supervised release<br>$2000 restitution | 46 months' incarceration<br>36 months' supervised release<br>$2000 restitution |
| Edwards, Gary | 1:21-CR-00366-JEB | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>24 months' probation<br>$500 restitution | 12 months' probation<br>$2500 fine<br>200 hours of community service<br>$500 restitution |
| Tutrow, Israel | 1:21-CR-00310-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 2 months' incarceration<br>$500 restitution | 2 months' home detention<br>36 months' probation<br>$500 restitution |
| Ridge IV, Leonard | 1:21-CR-00406-JEB | 18 U.S.C. § 1752(a)(1) | 45 days' incarceration<br>12 months' supervised release<br>60 hours community service<br>$500 restitution | 14 days' consecutive incarceration<br>12 months' supervised release<br>$1000 fine<br>100 hours community service<br>$500 restitution |
| Perretta, Nicholas | 1:21-CR-00539-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 30 days' incarceration<br>$500 restitution |
| Vukich, Mitchell | 1:21-CR-00539-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 30 days' incarceration<br>$500 restitution |
| Spencer, Virginia | 1:21-CR-00147-CKK | 40 U.S.C. § 5104(e)(2)(G) | 3 months' incarceration<br>36 months' probation<br>$500 restitution | 3 months' incarceration<br>$500 restitution |
| Kostolsky, Jackson | 1:21-CR-00197-DLF | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>$500 restitution | 30 days' home detention<br>36 months' probation<br>$500 restitution |

| | | | | |
|---|---|---|---|---|
| Rusyn, Michael | 1:21-CR-00303-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 45 days' incarceration<br>$500 restitution | 2 months' home detention<br>24 months' probation<br>$2000 fine |
| Tryon, William | 1:21-CR-00420-RBW | 18 U.S.C. § 1752(a)(1) | 30 days' incarceration<br>12 months' supervised release<br>$500 restitution | 50 days' incarceration<br>12 months' supervised release<br>$1000 fine<br>$500 restitution |
| Sells, Tanner | 1:21-CR-00549-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>60 hours community service<br>$500 restitution | 3 months' home detention<br>24 months' probation<br>$1500 fine<br>50 hours community service<br>$500 restitution |
| Walden, Jon | 1:21-CR-00548-DLF | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>60 hours community service<br>$500 restitution | 30 days' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution |
| Prado, Nicole | 1:21-CR-00403-RC | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>60 hours community service<br>$500 restitution | 2 months' 12-hour curfew<br>12 months' probation<br>$742 fine<br>60 hours community service<br>$500 restitution |
| Williams, Vic | 1:21-CR-00388-RC | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>60 hours community service<br>$500 restitution | 2 months' home detention<br>12 months' probation<br>$1500 fine<br>60 hours community service<br>$500 restitution |
| Wiedrich, Jacob | 1:21-CR-00581-TFH | 40 U.S.C. § 5104(e)(2)(G) | 3 months' incarceration<br>36 months' probation<br>$500 restitution | 3 months' home detention<br>36 months' probation<br>100 hours community service<br>$500 restitution |
| Stepakoff, Michael | 1:21-CR-00096-RC | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>60 hours community service<br>$500 restitution | 2 months' home detention<br>12 months' probation<br>$742 fine<br>60 hours community service<br>$500 restitution |

| Scirica, Anthony | 1:21-CR-00457-CRC | 40 U.S.C. § 5104(e)(2)(G) | 15 days' incarceration<br>$500 restitution | 15 days' incarceration<br>$500 fine<br>$500 restitution |
|---|---|---|---|---|
| Crase, Dalton | 1:21-CR-00082-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>36 months' probation<br>60 hours community service<br>$500 restitution | 15 days' intermittent incarceration (condition of probation)<br>36 months' probation<br>60 hours community service<br>$500 restitution |
| Williams, Troy | 1:21-CR-00082-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>36 months' probation<br>60 hours community service<br>$500 restitution | 15 days' intermittent incarceration (condition of probation)<br>36 months' probation<br>60 hours community service<br>$500 restitution |
| Languerand, Nicholas | 1:21-CR-00353-JDB | 18 U.S.C. § 111 (a) and (b) | 51 months' incarceration<br>36 months' supervised release<br>$2000 restitution | 44 months' incarceration<br>24 months' supervised release<br>60 hours community service<br>$2000 restitution |
| Wilson, Zachary | 1:21-CR-00578-APM | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>$500 restitution | 45 days' home detention<br>24 months' probation<br>60 hours community service<br>$500 restitution |
| Wilson, Kelsey | 1:21-CR-00578-APM | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>$500 restitution | 30 days' home detention<br>24 months' probation<br>60 hours community service<br>$500 restitution |
| McAuliffe, Justin | 1:21-CR-00608-RCL | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>$500 restitution | 2 months' home detention<br>36 months' probation<br>60 hours community service<br>$500 restitution |
| Williams, Andrew | 1:21-CR-00045-DLF | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>24 months' probation<br>60 hours community service<br>$500 restitution | 24 months' probation<br>60 hours community service<br>$500 restitution |
| Leffingwell, Mark | 1:21-CR-00005-ABJ | 18 U.S.C. § 111(a)(1) | 27 months' incarceration<br>36 months' supervised release<br>$2000 restitution | 6 months' incarceration<br>24 months' supervised release<br>200 hours community service |

| | | | | $2,000 restitution |
|---|---|---|---|---|
| Wagner, Joshua | 1:21-CR-00310-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>36 months' probation<br>$500 restitution | 30 days' incarceration<br>$500 restitution |
| Stenz, Brian | 1:21-CR-00456-BAH | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>60 hours community service<br>$500 restitution | 14 days' incarceration as a condition of probation<br>2 months' home detention<br>36 months' probation<br>$2500 fine<br>$500 restitution |
| Schornak, Robert | 1:21-CR-00278-BAH | 18 U.S.C. § 1752(a)(1) | 4-6 months' incarceration<br>12 months supervised release<br>60 hours community service<br>$500 restitution | 28 days' intermittent incarceration (2 14-day intervals)<br>2 months' home detention<br>36 months' probation |
| Castro, Mariposa | 1:21-CR-00299-RBW | 40 U.S.C. § 5104(e)(2)(G) | 2 months' incarceration<br>$500 restitution | 45 days' incarceration<br>$5000 fine |
| Sunstrum, Traci | 1:21-CR-00652-CRC | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>$500 restitution | 30 days' home detention<br>36 months' probation<br>$500 restitution |
| Register, Jeffrey | 1:21-CR-00349-TJK | 40 U.S.C. § 5104(e)(2)(G) | 5 months' incarceration<br>$500 restitution | 75 days' incarceration<br>$500 restitution |
| Johnson, Adam | 1:21-CR-00648-RGW | 18 U.S.C. § 1752(a)(1) | 90 days' incarceration<br>12 month's supervised release<br>$5000 fine | 75 days' incarceration<br>12 months' supervised release<br>$5000 fine |
| Howell, Annie | 1:21-CR-00217-TFH | 18 U.S.C. § 1752(a)(1) | 60 days' incarceration<br>12 month's supervised release<br>$500 restitution | 60 days' intermittent incarceration, to be served in 10-day installments, as a condition of probation<br>36 months' probation<br>60 hours community service<br>$500 restitution |
| Gonzalez, Eduardo | 1:21-CR-00115-CRC | 40 U.S.C. § 5104(e)(2)(G) | 3 months' incarceration<br>$500 restitution | 45 days' incarceration<br>24 months' probation<br>$1000 fine<br>$500 restitution |
| Wilson, Duke | 1:21-CR-00345-RCL | 18 U.S.C. § 1512(c)(2)<br>18 U.S.C. § 111(a)(1) | 46 months' incarceration | 51 months' incarceration<br>36 months' supervised release |

| | | | $2000 + TBD restitution for injured officer | TBD restitution |
|---|---|---|---|---|
| Strong, Kevin | 1:21-CR-00114-TJK | 40 U.S.C. § 5104(e)(2)(G) | 14 days' incarceration<br>36 months' probation<br>$500 restitution | 30 days' home detention<br>24 months' probation<br>$500 restitution |
| Bonet, James | 1:21-CR-00121-EGS | 18 U.S.C. 1752(a)(1) | 45 days' incarceration<br>12 months' probation<br>$500 restitution | 90 days' incarceration<br>12 months' probation<br>200 hours community service<br>$500 restitution |
| Nalley, Verden | 1:21-CR-00016-DLF | 18 U.S.C. 1752(a)(1) | 14 days' incarceration<br>12 months' probation<br>$500 restitution<br>60 hours community service | 24 months' probation<br>60 hours community service<br>$500 restitution |
| Carico, Michael | 1:21-CR-00696-TJK | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>36 months' probation<br>$500 restitution | 2 months' home detention<br>24 months' probation<br>$500 fine<br>60 hours community service<br>$500 restitution |
| Little, James | 1:21-CR-00315-RCL | 40 U.S.C. § 5104(e)(2)(G) | 30 days' incarceration<br>36 months' probation<br>$500 restitution | 60 days' incarceration<br>36 months' probation<br>$500 restitution |

14