<table>
<tr><td colspan="2" align="center">IN THE DISTRICT COURT OF THE UNITED STATES<br>FOR THE DISTRICT OF COLUMBIA</td></tr>
</table>

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>John Hubert Getsinger, Jr.,<br><br>                    Defendant. | CASE NO. 1:21-CR-00607-EGS |

**MEMORANDUM IN AID OF SENTENCING**

John Hubert Getsinger, Jr. submits the following memorandum in aid of sentencing, which is scheduled to occur before the Honorable Judge Emmet G. Sullivan on April 21, 2022. Based on Mr. Getsinger's background, his very limited role in the January 6 Capitol riot and incursion, and the sentences imposed for similarly situated defendants, Mr. Getsinger respectfully requests the Court impose a sentence of probation and a payment of $500.00 in restitution. A term of supervision would best effectuate the sentencing goals of 18 U.S.C. §3553(a), particularly considering Mr. Getsinger's history and characteristics and minimal participation in the events of January 6, 2021.  In further support of this request Mr. Getsinger provides the following.

## I. BACKGROUND

The instant case is a small part of what has been described as one of the largest investigations and prosecutions in American history.  (United States v. Calwell, Government's Motion to Continue, Doc. 73 p. 2; CR-21-028 (D.D.C.)).  Mr. Getsinger has plead guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G) and has accepted full responsibility for his actions in the January 6 Capitol riot and incursion. Mr. Getsinger does not attempt to downplay the severity of the events of January 6,

2021, nor to minimize the historical significance of the violence and disruption in our nation's capital. Mr. Getsinger is filled with remorse and contrition for his actions and has taken full responsibility for his actions when plead guilty.

Contrary to the Government's repeated assertions that Mr. Getsinger has no remorse and has not until recently expressed his remorse, John Getsinger has, under the strict advice of counsel, not been able to express any remorse or contrition or discuss his case until after he plead guilty even though he has been remorseful and filled with sincere regret since, after a little self-reflection regarding his participation in the January 6 riot and incursion into the Capital building. Under the strict advice of counsel, Mr. Getsinger has been advised not to make any comments publicly or privately regarding this case to anyone ***including*** (emphasis added) his family. Mr. Getsinger fully understands the gravity of his participation in the events of January 6th and is ashamed of himself for going to the Washington D.C. and walking into the Capital. John Getsinger is embarrassed for his 16 year old daughter who has to live with the fact that her father used terrible judgment and entered to Capital on January 6, 2021.It has been over one year since President Donald Trump lost the 2020 election and announced a "Save America" rally to protest the results.[1] Mr. Getsinger traveled in a bus with members of his community to attend a political rally headlined by President Trump. This was Mr. Getsinger's first trip to Washington, D.C. as an adult. He attended the rally located at the Ellipse which is south of the White House, specifically south of Constitution Avenue between 15th and 17th  Streets.

---

1       President Trump announced the rally on Twitter, tweeting, "Big protest in D.C. on January 6th . . . Be there,

will be wild!" *See* Dan Barry and Sheera Frenkel, *'Be There. Will Be Wild!': Trump All but Circled the Date,* The
New York Times (Jan. 6, 2021), available at
https://www.nytimes.com/2021/01/06/us/politics/capitol-mob-trumpsupporters.html.

What began as a trip to hear what he thought would be the President's last speech and to hear from other politicians and political commentators, regrettably turned into an unruly mob attempting to take control of the halls of Congress.

Mr. Getsinger was concerned and distressed that the election results were wrong and that the process was rife with "fraud" because his sole source of news was FOX News. When John Getsinger and his wife Stacie Getsinger took the bus to Washington, D.C., they wanted to hear from President Trump and his supporters and listen to their arguments for why the election results were wrong. Mr. Getsinger nor his wife Stacie never believed or intended that anything other than the certification of Joe Biden as the next President would happen. There was never an intent to participate in a riot, insurrection or any other criminal activity that day. John and Stacie Getsinger were there to hear the President and his supporters and to try and make sense of the political rhetoric at the time.

There were a multitude of speakers and when former President Trump did speak, he lamented that the election results were false, and he begged the audience to "fight" for him. John and Stacie listened to the speeches and then followed the masses of people walking down Pennsylvania Avenue to the Capital building where they planned to listen to Alex Jones speak. When the Getsingers reached the Capital, they saw Jones standing on the back of a truck instructing the crowd to go the rear of the Capital building to see President Trump give his next speech, which in reality, did not occur.

Mr. Getsinger did not engage in violence or destruction when he walked up the steps to the Capital. Mr. Getsinger did not push up against or confront any law enforcement officers. Mr. Getsinger did not scream obscenities or break down any doors prior to entering the Capital. Mr. Getsinger did not show up with weapons, zip ties, helmets, goggles, backpack, or body armor; nor did he meet with others and plan and execute an attack on the United States Capitol Building.

Mr. Getsinger did enter the United States Capitol Building unlawfully on January 6, 2021, and he did so because he was swept up in the crowd mentality of the day, ***but*** (emphasis added) he did not engage in any violence or physical contact with Capital Police Officers, nor did he engage in any vandalism or destruction of property either before, during or after entering the United States Capitol Building. Mr. Getsinger is not and has never been a member of any extremist group such as the Proud Boys or the Three Percenters who deliberately traveled to Washington D.C. on January 6 as part of an organized attack on the United States Capitol Building. These extremists deliberately went to the United States Capitol Building with the explicit aim of disrupting the certification of the Electoral College.

Mr. Getsinger was not in Washington D.C. to disrupt the certification of the Electoral College; he was there to listen to President Trump and other speakers and in his mind, to exercise his 1st Amendment right to free speech, the right to assembly and the right to petition the Government for a redress of grievances. John Getsinger was seriously misguided regarding his 1st Amendment rights but he was trying to exercise them albeit in an imperfect way.

In video provided by the Government, Mr. Getsinger is seen walking up the steps of the United States Capitol Building from the Upper West Terrace door to the Rotunda.  He did not engage in violence or assist others in breaching the building.  John Getsinger walked to the middle of the Rotunda, holding the hand of his wife, where they both stand for a few minutes looking at the art and the statues and then take a seat on a bench to the right hand side of the door that they entered. During the time that John and Stacie Getsinger where siting in the Rotunda, they had a friendly chat with a Capital Police Officer who told they them could not leave the Rotunda at that time due to the massive amount of people entering the Rotunda at that time. The Capital Police Officer instructed Mr. and Mrs. Getsinger to wait until things "calmed down" before they left, and they followed those instructions. After remaining on the bench for approximately thirty (30)

minutes, the Getsinger's then rise and briefly walk to Congressman Kevin McCarthy's office looking for a way out of the building and, after entering for approximately 40 seconds. They immediately walked back to the Rotunda and found a way to exit the building the same way they entered without incident or confrontation with police.

Mr. Getsinger's actual time in the United States Capitol Building was approximately 39 minutes, including time walking up the stairs, time spent in the Rotunda, the brief visit to Congressman Kevin McCarthy's office and waiting to leave out the same door they entered. Notably, Mr. Getsinger did not explore the United States Capitol Building beyond the Rotunda except for the brief 40 second visit to Congressman Kevin McCarthy's office.  Throughout the Capitol Building, there are stairs and hallways connecting to various parts of the building.  Many of these corridors connect to the Rotunda and lead to very sensitive areas such as the House Chambers but Mr. Getsinger did not wander about and definitely did not enter these hallowed chambers.  Essentially he walked into the Rotunda, sat for a while and then walked through the Rotunda and exited the building.

At no point did Mr. Getsinger engage in or incite any violence.  He was mostly silent during his time inside the United States Capitol Building.  John Getsinger did not call for harm to come to anyone, or remark about his presence within the United States Capitol Building.  Mr. Getsinger did not damage any property. He came plain clothed, with no political messages.  He did not carry a flag, nor did Mr. Getsinger come with protective gear, such as padding, helmets, goggles, backpack, or body armor.  He did not carry a radio or pepper / bear spray. John Getsinger did not come to the United States Capitol Building looking for a fight. John Getsinger walked in an open door and recorded himself traveling through and sitting in the Rotunda and, after 39 minutes, exited out the same door he entered.

While he was in the United States Capitol Building, he was passed a marijuana cigarette and he took a puff and then passed the marijuana cigarette back to the person that passed it to him. After he exited, Mr. Getsinger remained outside for a few more minutes before he left the United States Capitol Building grounds and returned to the bus to return home. His time in the United States Capitol Building was spent looking around at the events that were unfolding rather than actively contributing to the chaos outside or inside. Mr. Getsinger played a very small role in the January 6, 2021, riot.

Mr. Getsinger is not proud of his participation in the events of January 6.  Mr. Getsinger realizes that even his minimal participation contributed towards a tumultuous, tragic and unnecessary event that is a stain on our nation's history. Additionally, John Getsinger understands and regrets that his participation in the riot has destroyed his life, both professionally and personally including his estrangement from various family members and, to a degree from his 16 year old daughter.  He did not travel to Washington D.C. with the intent to storm the United States Capitol Building, disrupt democracy and become a social pariah. John Getsinger was in Washington D.C. solely to see President Trump speak and to exercise his First Amendment rights. Mr. Getsinger is very ashamed of his behavior and is extremely remorseful for his conduct. He accepts full responsibility for his actions and is prepared for the consequences of his actions.

## II. THE 18 U.S.C. § 3553(a) FACTORS FAVOR A SENTENCE OF PROBATION

Mr. Getsinger has plead guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G). This is a class B misdemeanor or "petty offense," as defined by 18 U.S.C. §3559(a)(7) and it carries a maximum incarceration period of six months or less. The United States Sentencing Guidelines (Guidelines) do not apply to class B misdemeanors. *See* U.S.S.G. §1B1.9. Pursuant to 18 U.S.C. § 3583(b)(3), the Court is disallowed from imposing a term of supervised release for a petty offense, and if it imposes active, continuous

imprisonment, 18 U.S.C. § 3551 ostensibly does not support an additional period of probation to follow. *See United States v. Torrens et. al.*, Crim. No. 21-cr-204 (BAH), ECF No. 110, 113, & 125.

Because the Guidelines do not apply, the Court is directed to look to 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a)(1) factors  include "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence imposed by considering if and how a term of incarceration would "reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;" *Id*. at (2)(A). Additionally, the Court should consider how a sentence would "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" *Id*. at 2(B-D). Ultimately, the Court must be aware of "the kinds of sentences available," and consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," and consider the "need to provide restitution to any victims of the offense." *Id*. at (3), (6), & (7).

### A.   <u>The Nature and Circumstances of the Offense</u>

There has never been an event quite like the January 6 riot in the United States. John Getsinger has readily admitted to his participation in the riot notwithstanding his involvement was in a minor way. To be clear, Mr. Getsinger played no role in organizing the January 6 events. John was not violent and did not damage, destroy or steal any property or urge, incite or encourage others to do so. John Getsinger is in an entirely different category from other defendants who were members of various extremist groups who conspired in advance to assault the Capitol and stormed Capitol Hill clad in body armor,  carrying weapons and zip ties and used flag poles

to break windows to force their way into the House Chamber and create bedlam.

The Government in its Sentencing Memoranda in this case as well as those of other January 6 defendants has proposed nine (9) factors for the Court to consider in crafting a just sentence for defendants involved with the January 6 attack. These are:

1) Whether, when, and how the defendant entered the Capitol Building;

2) Whether the defendant engaged in any violence or incited violence;

3) Whether the defendant engaged in any acts of destruction;

4) The defendant's reaction to acts of violence or destruction;

5) Whether during or after the riot, the defendant destroyed evidence;

6) The length of the defendant's time inside of the building, and exactly where the defendant traveled;

7) The defendant's statements in person or on social media;

8) Whether the defendant cooperated with, or ignored commands from law enforcement;

9) and; Whether the defendant otherwise exhibited evidence of remorse or contrition.

The Government's sentencing memoranda in these cases assert that these factors help place each defendant's conduct on a spectrum for the purpose of imposing a fair sentence for each individual. Applying those factors to the instant case, it is clear that John Getsinger stands at the end of the spectrum furthest from the most culpable and egregious defendants who planned to participate in a violent insurrection and actually did so and who, according to the Government's nine (9) factors, are more deserving of a harsh sentence.

Regarding Factor 1), When Mr. Getsinger entered the Capitol at 2:44 PM he knew he did not have permission to do so, but he followed the crowd in through an open door. He did not break, smash or force open any windows or doors; nor did John Getsinger fight with a member of law enforcement, he just walked through an open door. By the time John Getsinger entered the

building, hundreds, if not thousands, of others had already passed through the same door and law enforcement was passively standing by. Entering was not legal, but the way he entered was not violent nor destructive and definitely puts Mr. Getsinger on the less responsible end of the spectrum.

Regarding Factors 2) and 3), John Getsinger engaged in no violence or acts of destruction whatever, nor did he incite or encourage others to do so, and this definitely puts Mr. Getsinger on the less responsible end of the spectrum.

Regarding Factor 4), John Getsinger witnessed some of the rioters fighting with law enforcement on January 6. But he never participated in these acts of violence nor did he cheer like so many others when the police were assaulted and forced to retreat. Mr. Getsinger did not take any steps to encourage or applaud lawbreaking. He was just an observer to the violence which puts Mr. Getsinger on the less responsible end of the spectrum.

Regarding Factor 5), John Getsinger did not destroy evidence. To the contrary, when the FBI came to his house, he invited them in and showed them around. He not only handed over his cell phone but provided the code so that agents could examine data in the phone. This definitely puts Mr. Getsinger on the less responsible end of the spectrum.

Regarding Factor 6), Mr. Getsinger was inside the building for approximately 39 minutes. In that time, he did not cross any police line or enter the House Chamber. John did briefly enter Congressman Kevin McCarthy's office for approximately 40 seconds before leaving. At this point many people had streamed in and out of that office before John entered it. He did not ransack the office or take anything from the office. As Image 22 and Image 23 of the United States Sentencing Memorandum shows, there is no sign outside office Congressman Kevin McCarthy's office indicating that it is a congressman's private office. Even though his entry onto the Capital was illegal, it was only for a short period of time, approximately 39 minutes and only in the Rotunda

area with a brief foray of 40 seconds into Congressman Kevin McCarthy's office. These actions show that Mr. Getsinger is on the less responsible end of the spectrum.

Regarding Factor 7), John Getsinger differs from many of the more culpable January 6 defendants in that he has virtually no online presence, and neither posted nor transmitted on social media any messages about the events of January 6. In fact, Mr. Getsinger has stopped using and has deleted his Facebook account.

Regarding Factor 8), John Getsinger cooperated fully with law enforcement when he was arrested. John Getsinger believes deeply in following the orders of police officers. If any officer had told him not to go into the Capitol, he would have followed that instruction. Indeed, when an officer in the rotunda directed Mr. Getsinger to leave, he promptly did so. As discussed above, when the FBI came to his home in June, John Getsinger was extremely cooperative.

Regarding Factor 9), Mr. Getsinger himself will address the Court at the sentencing hearing, at which time the Court will have the opportunity to assess his remorse and contrition.

## B.   History and Characteristics of Mr. Getsinger

Mr. Getsinger was born and raised in South Carolina. Even though his parents divorced when he five (5), he has maintained a very close relationship with both of his parents and his stepparents as well. He is married and currently lives in Reevesville South Carolina, located in Dorchester County South Carolina, a modest small town with an approximate population of less than 500 people. Mr. Getsinger has had a steady employment history utilizing his skills gained as an electrician earning him a certification from the local union as an electrical apprentice. He did this without a college education. Mr. Getsinger briefly attended college before concluding he would prefer not to accumulate thousands of dollars in student loans. Instead, he learned the electrical trade and worked in this industry including employment as a lineman with AT&T until he left employment due to health concerns because of high blood pressure and other health issues.

Before he was arrested, Mr. Getsinger worked as a Lyft driver until he was de-platformed due to his participation in the events of January 6, 2021. He has been unemployed since his arrest because of the arrest and the outstanding charges against him. Currently he is in training to work for Celebrate Solar, Inc. as an appointment scheduler.

Mr. Getsinger has one daughter, Hailee Getsinger who is sixteen years old. Hailee resides both with her mother (Mr. Getsinger's ex-wife) and has close weekly contact with Mr. Getsinger who is a loving father. Mr. Getsinger pays child support and has been steadily paying child support even when he lost his job. If Mr. Getsinger is sentenced to a period of incarceration, this would greatly disrupt the life of his minor child even more than her life has already been disrupted by Mr. Getsinger's regrettable actions. John Getsinger is tormented on a daily basis for the pain and shame he has inflicted on his daughter along with the rest of his family.

Mr. Getsinger has never had any contact or encounters with law enforcement with the exception of one (1) encounter with a Game Warden over the number of shotgun shells a hunter can possess while dove hunting in South Carolina, prior to this instant offense. Even though the sentencing guidelines do not apply, Mr. Getsinger would score in the lowest criminal history category due to his criminal history. Mr. Getsinger has no history of alcohol dependency but has been a regular user of marijuana mostly as a form of self-medication for his chronic arthritis pain. Since his arrest he has not used any illegal substances and will test clean if and when he is drug tested.

Since his arrest, John Getsinger has completely turned off politics and the news. He does not trust what he sees on TV and hears on radio and has stayed off the internet in regard to news as he just can't trust what he sees, reads or hears any more. Additionally, John has shut off his social media and he does not talk about politics with anyone.

John Getsinger has been a productive member of society his entire life. He has always

maintained steady employment up until this instant offense. Mr. Getsinger wants to move on with his life, get employed again and build back his relationships with is daughter, his family and his wife.

### C.       Probation Accomplishes the Goals of Sentencing and Deterrence

The unique series of circumstances, both political and social, that led to the January 6 attack are unlikely to ever occur again. If these or similar circumstances where to ever occur again, it is a foregone conclusion that John Getsinger would stay as far away from the event(s) as humanly possible and he would not participate in, comment on or play any role in the event(s) whatsoever. For all of his life, John Getsinger has been a law abiding citizen until he made a terrible decision to unlawfully enter the United States Capitol Building. As a result of his actions on January 6, John was arrested and detained, harassed and ridiculed by family and strangers alike. He has become estranged from friends and family, especially his 16 year old daughter. His bank, Wells Fargo where he had a relationship of over 6 years, involuntarily closed his accounts due to his participation in the January 6 riots. He lost his job due to his participation in the January 6 events and has become a social pariah. Soon John Getsinger will stand before a judge where  his liberty and his future at stake. The consequences of his actions on January 6 have devastated Mr. Getsinger and are more than enough to deter John from ever making the same terrible choices again.

The Court must impose a punishment that is "sufficient, but not greater than necessary," to effectuate the policy objectives of Congress in 18 U.S.C. § 3553(a) and "to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S.Ct. 1170, 1175 (2017).  This "parsimony" clause is the "overarching provision" of the statute. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Specific deterrence in this case is not a major factor.  Mr. Getsinger does not require incarceration to protect the public from further crimes committed by him. For the reasons stated

above, Mr. Getsinger wants to never be involved with anything like the January 6 riots or any other law breaking activities again. He has paid a high price for his terrible decision to go to Washington D.C. and enter the United States Capitol Building illegally.

Mr. Getsinger understands the need for the Court to address the issue for general deterrence and understands that the Court may want to impose a sentence that would deter future individuals from committing the same or similar conduct. Respectfully, incarcerating Mr. Getsinger is not necessary to effectuate this sentencing objective. His arrest, prosecution, and supervision have clearly indicated to the public that the United States Government will investigate and successfully prosecute these actions.

Mr. Getsinger and his wife have suffered immense humiliation, disgrace, loss of friends and family relationships and have generally been ostracized from society due to their participation in the January 6, 2021, events. They have both lost their employment and financially struggled to survive. They so much, every day, wish they could return to that day and simply walk away. To not participate in the single event and the bad decision to participate in the event that has completely destroyed their lives. Additional punishment of incarceration is wholly unnecessary at this time for specific or general deterrence.

United States Probation in Mr. Getsinger's Sentencing Recommendation Report (SR) addressed "deterrence, community safety (incapacitation), and punishment" by stating that "Mr. Getsinger has been in compliance with his pretrial supervision and the terms of his release. He does not appear to present a danger to the community and goals of sentencing may be accomplished through a non- custodial sentence of probation supervision which would enable him to work and provide for his minor daughter. Rehabilitation does not appear to be a particular concern for this defendant." *See* SR ¶ 7, pg 2. Additionally, the Sentencing Recommendation Report states that "Mr. Getsinger's culpability appears to be minimal in contrast with rioters who destroyed or stole

government property and assaulted or threatened the law enforcement officers on that date." *See* SR ¶ 2, pg 1.

For the above referenced reasons, there is no need to impose a term of incarceration on Mr. Getsinger to deter him from ever committing additional crimes and to protect the public from any future crimes of Mr. Getsinger.

The United States Probation Office in Mr. Getsinger's Sentencing Recommendation Report has recommended that John Getsinger be sentenced to "a term of 24 months' probation and the payment of restitution" of $500.00. *See* SR ¶ , pg 2. The factors in this case including the recommendation from Probation counsel in favor of a sentence of probation.  A sentence of probation will reflect the seriousness of the offense. In *Gall v. United States*, 552 U.S. 38, 48-49 (2007), the Supreme Court noted that probationary sentences substantially restrict an offender's freedom. *Id*. ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."). Probation results in a lengthier term of supervision and it is a serious punishment requiring Mr. Getsinger to remain under conditions.

### D.      <u>Unwarranted Sentencing Disparities</u>

Under 18 U.S.C. § 3553(a)(6) the Court is also required to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. In this district, judges have imposed sentences of probation for violations of 40 U.S.C. § 5104(e)(2)(G) for defendants with more egregious facts that in Mr. Getsinger's case.

A non-exhaustive list of defendants convicted of 40 U.S.C. § 5104(e)(2)(G) who received a probationary sentence is attached as Exhibit A.  Mr. Getsinger' conduct is comparable to these defendants.  In fact, many of the defendants receiving probationary sentences engaged in more egregious conduct, including brazen social media posts about storming the United States

Capitol Building, some being among the first people to enter the Capitol Building, entering through broken windows, and initially stating their actions were justified and proper, and many spending more time in places within the United States Capitol Building.  The range of conduct yielding probationary sentences in other cases similarly charged strongly supports a probationary sentence for Mr. Getsinger.

### III. CONCLUSION

The Capitol riot and incursion on January 6, 2021, will be remembered in  history as a bad day for the United States and a bad day for democracy. When John Getsinger traveled to Washington D.C. he had no intention of participating in a riot or an illegal incursion into the Capitol or hurt anyone or damage anything. John Getsinger did not organize or incite the riot, nor did he physically harm any person or property. John has no criminal history and is full of remorse and self-loathing and he has taken full responsibility for his actions. In light of Mr. Getsinger's limited role in the January 6 Capitol incursion, his lack of a criminal history, his sincere regret for his actions and the sentences imposed for similarly situated defendants, he prays this Court impose a sentence of probation and order him to pay $500 in restitution.

Respectfully Submitted,


s/ *Charles A. George*

Charles A. George, Esq.
DC Bar #1510644
charles@george-law.com
George Law Firm, LLC – Criminal Law Group
P.O. Box 354
Mount Pleasant, SC 29465-0354
Telephone: 404-441-3100
Facsimile:  843-388-4430


Charleston, South Carolina
April 1, 2022

Table 1: Cases in which the government recommended a probation sentence without home detention[1]

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Morgan-Lloyd, Anna | 1:21-CR-00164-RCL | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, 120 community service hours, $500 restitution |
| Ehrke, Valerie | 1:21-CR-00097-PLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, $500 restitution |
| Bissey, Donna | 1:21-CR-00165-TSC | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 14 days incarceration, 60 hours community service, $500 restitution |
| Hiles, Jacob | 1:21-CR-00155-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Wangler, Douglas | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 60 hours of community service, $500 restitution |
| Harrison, Bruce | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 48 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 60 hours of community service, $500 restitution |

---

[1] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Table 2: Cases in which the government recommended a probation sentence with home detention

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Bustle, Jessica | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 40 hours community service, $500 restitution | 2 months of home detention, 24 months' probation, 40 hours community service, $500 restitution |
| Bustle, Joshua | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 40 hours community service, $500 restitution | 1 month home detention, 24 months' probation, 40 hours community service, $500 restitution |
| Doyle, Danielle | 1:21-CR-00324-TNM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 probation | 2 months' probation, $3,000 fine, $500 restitution |
| Bennett, Andrew | 1:21-CR-00227-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 3 months of home detention, 24 months' probation, 80 hours community service, $500 restitution |
| Mazzocco, Matthew | 1:21-CR-00054-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 45 days incarceration, 60 hours community service[2], $500 restitution |
| Rosa, Eliel | 1:21-CR-00068-TNM | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 12 months' probation, 100 hours community service, $500 restitution |
| Gallagher, Thomas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, a fine, and $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Vinson, Thomas | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 3 years' probation, 60 hours community service, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |

---

[2] The government believes the Court's 10/4/2021 minute entry in this case is incorrect and the sentence requires 60 *hours* of community service, not 60 *months*.

| Sanders, Jonathan | 1:21-CR-00384-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, 60 hours community service, $500 restitution |
|---|---|---|---|---|
| Fitchett, Cindy | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Sweet, Douglas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Cordon, Sean | 1:21-CR-00269-TNM | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months' probation, $4000 fine |
| Wilkerson, John IV | 1:21-CR-00302-CRC | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, $2500 fine, 60 hours community service, $500 restitution |
| Jones, Caleb | 1:21-CR-00321-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months home detention, 24 months' probation, $500 restitution, 100 hours community service |
| Brown, Terry | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, $500 restitution, 60 hours community service |
| Wrigley, Andrew | 1:21-CR-00042-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 18 months' probation, $2000 fine, $500 restitution, 60 hours community service |

| Parks, Jennifer | 1:21-CR-00363-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, $500 restitution, 60 hours community service |
|---|---|---|---|---|
| Reimler, Nicholas | 1:21-CR-00239-RDM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Miller, Brandon | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 20 days incarceration, 60 hours community service, $500 restitution |
| Miller, Stephanie | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 14 days incarceration, 60 hours community service, $500 restitution |
| Hatley, Andrew | 1:21-CR-00098-TFH | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, $500 restitution |
| Wickersham, Gary | 1:21-CR-00606-RCL | 40 U.S.C. § 5104(e)(2)(G) | 4 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 3 months home detention, 36 months' probation, $2000 fine, $500 restitution |
| Schwemmer, Esther | 1:21-CR-00364-DLF | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Kelly, Kenneth | 1:21-CR-00331-CKK | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months home detention, 12 months' probation, 60 hours community service, $500 restitution |
| Sizer, Julia | 1:21-CR-00621-CRC | 40 U.S.C. § 5104(e)(2)(G) | 60 days home detention 3 years probation | 12 months probation $2,000 fine |

Table 3: Cases in which the government recommended a sentence of incarceration

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Curzio, Michael | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | Not applicable | 6 months incarceration (time served), $500 restitution |
| Dresch, Karl | 1:21-CR-00071-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration (time served), $500 restitution | 6 months incarceration (time served), $500 restitution |
| Rau, Erik | 1:21-CR-00467-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months incarceration, $500 restitution | 45 days incarceration, $500 restitution |
| Hemenway, Edward | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Reeder, Robert | 1:21-CR-00166-TFH | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration, $500 restitution | 3 months incarceration, $500 restitution |
| Bauer, Robert | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Vinson, Lori | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |
| Griffith, Jack | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 3 months incarceration, $500 restitution | 90 days home detention, 36 months probation, $500 restitution |
| Torrens, Eric | 1:21-CR-00204-BAH | 40 U.S.C. §5104(e)(2)(G) | 2 weeks incarceration, $500 restitution | 90 days home detention, 36 months probation, $500 restitution |
| Gruppo, Leonardo | 1:21-CR-00391-BAH | 40 U.S.C. §5104 (e)(2)(G) | 30 days incarceration, $500 restitution | 90 days home detention, 24 months probation, $3,000 fine, $500 restitution |
| Ryan, Jenna | 1:21-CR-00050-CRC | 40 U.S.C. §5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $1,000 fine, $500 restitution |
| Croy, Glenn | 1:21-CR-00162-BAH | 40 U.S.C. §5104(e)(2)(G) | 60 days incarceration, $500 restitution | 90 days home detention, 14 days community correction facility, 36 months probation, $500 restitution. |

| | | | | |
|---|---|---|---|---|
| Stotts, Jordan | 1:21-CR-00272-TJK | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 60 days home detention, 24 months' probation, $500 restitution, 60 hours community service |
| Camper, John | 1:21-CR-00325-CKK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $500 restitution, 60 hours community service |
| Rukstales, Bradley | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Mish, David | 1:21-CR-00112-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Lolos, John | 1:21-CR-00243-APM | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 14 days incarceration, $500 Restitution |
| Scavo, Frank | 1:21-CR-00254-RCL | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 60 days incarceration, $5000 fine, $500 restitution |
| Abual-Ragheb, Rasha | 1:21-CR-00043-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 60 days home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Peterson, Russell | 1:21-CR-00309-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Simon, Mark | 1:21-CR-00067-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 35 days incarceration, $500 restitution |
| Ericson, Andrew | 1:21-CR-00506-TNM | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 20 days incarceration (consecutive weekends), 24 months' probation, $500 restitution |
| Pham, Tam Dinh | 1:21-CR-00109-TJK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 45 days incarceration, $1000 fine, $500 restitution |
| Nelson, Brandon | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $2500 fine, $500 restitution, 50 hours community service |
| Markofski, Abram | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $1000 fine, $500 restitution, 50 hours community service |
| Sorvisto, Jeremy | 1:21-CR-00320-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |

| Edwards, Gary | 1:21-CR-00366-JEB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, 24 months' probation, $500 restitution | 12 months' probation, $2500 fine, 200 hours of community service, $500 restitution |
|---|---|---|---|---|
| Tutrow, Israel | 1:21-CR-00310-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 2 months home detention, 36 months' probation, $500 restitution |
| Perretta, Nicholas | 1:21-CR-00539-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Vukich, Mitchell | 1:21-CR-00539-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Spencer, Virginia | 1:21-CR-00147-CKK | 40 U.S.C. § 5104(e)(2)(G) | 3 months incarceration, 36 months' probation, $500 restitution | 90 days incarceration, $500 restitution |
| Kostolsky, Jackson | 1:21-CR-00197-DLF | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days home detention, 36 months' probation, $500 restitution |
| Rusyn, Michael | 1:21-CR-00303-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 60 days home detention, 24 months' probation, $2000 fine |
| Sells, Tanner | ~~1:21-CR-00549-ABJ~~ | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, 36 months' probation, 60 hours community service, $500 restitution | 90 days home detention, 24 months' probation, 50 hours community service, $1500 fine, $500 restitution |
| Walden, Jon | 1:21-CR-00548-DLF | 40 U.S.C. § 5104(e)(2)(G) | At least two weeks incarceration, 60 hours community service, $500 restitution. | 30 days home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Mariotto, Anthony | 1:21-CR-00094-RBW | 40 U.S.C. § 5104(e)(2)(G) | 4 months incarceration, 36 months' probation, $500 restitution | 36 months' probation, 250 hours community service, $5000 fine, $500 |

| Wiedrich, Jacob | 1:21-CR-00581-TFH | 40 U.S.C. § 5104(e)(2)(G) | 3 months incarceration, 36 months' probation, $500 restitution | 3 months home detention, 36 months' probation, 100 hours community service, $500 restitution |
| Stepakoff, Michael | 1:21-CR-00096-RC | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration | 2 months home detention 12 months probation; $500 restitution; $742 fine |
| Scirica, Anthony | 1:21-CR-00457-CRC | 40 U.S.C. § 5104(e)(2)(G) | 15 days incarceration; 4 months' home detention | 15 days incarceration $500 restitution; $500 fine |
| Crase, Dalton | 1:21-CR-00082-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration 36 months probation | 15 days intermittent incarceration as a condition of 36 months probation; $500 restitution; 60 hours community service |
| Williams, Troy | 1:21-CR-00082-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration 36 months probation | 15 days intermittent incarceration as a condition of 36 months probation; 60 hours community service |
| Wilson, Zachary | 1:21-CR-578 - APM | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration 36 months probation | 24 months probation; 45 days home detention; 60 hours community service; $500 restitution |
| Wilson, Christine | 1:21-CR-578 - APM | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration 36 months probation | 24 months probation 30 days home detention; 60 hours community service; $500 restitution |
| McAuliffe | 1:21-CR-608 - RCM | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration 36 months probation | 36 months probation; 60 days home detention; 60 hours community service; $500 restitution |